# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **LISA KWESELL; CHRISTINE TURECEK; AND JASON SCHWARTZ,** individually and on behalf all others similarly situated, | : : : : : | **CASE NO: 3:19-cv-01098 (KAD)** |
| | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **MOTION FOR PRELIMINARY** |
| | : | **APPROVAL OF CLASS ACTION** |
| **Plaintiffs,** | : | **SETTLEMENT** |
| | : | |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY,** | : | |
| | : | |
| **Defendant.** | : | **March 4, 2022** |

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ i

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL ................ 1

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ................................................................................................ 2

III.    OVERVIEW OF THE SETTLEMENT ................................................................ 4

       A.     Monetary Relief ...................................................................................... 4

       B.     Injunctive/Programmatic Relief .............................................................. 6

IV.    LEGAL STANDARD ........................................................................................ 6

V.     THE COURT SHOULD PRELIMINARILY APPROVE THE
       SETTLEMENT BECAUSE IT IS THE PRODUCT OF ARMS'-LENGTH
       NEGOTIATIONS AND IS FAIR, REASONABLE, AND ADEQUATE ........................ 7

       A.     The Proposed Settlement is the Result of Non-Collusive, Arms'-
             Length Negotiations ................................................................................ 7

       B.     The Proposed Settlement is Fair and Reasonable, Particularly in
             Light of the Risks and Cost of Continued Litigation ............................... 8

       C.     The Requested Service Awards are Fair and Reasonable .................................. 10

VI.    THE FORM AND MANNER OF NOTICE TO THE CLASS SHOULD BE
       APPROVED ................................................................................................... 12

VII.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR
       SETTLEMENT PURPOSES .............................................................................. 13

       A.     The Proposed Settlement Class Satisfies Federal Rule of Civil
             Procedure 23(a) ...................................................................................... 13

       B.     The Proposed Settlement Class Satisfies Federal Rule of Civil
             Procedure 23(b)(3) ................................................................................. 14

       C.     Plaintiffs' Counsel Should be Appointed as Class Counsel ................................. 15

i

VIII.    PROPOSED SCHEDULE OF EVENTS ...............................................................16

IX.       CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................15

*Aros v. United Rentals, Inc.*,
    2012 U.S. Dist. LEXIS 104429 (D. Conn. 2012) ...........................................10

*Castagna v. Madison Square Garden, L.P.*,
    2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011)....................................8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)............................................................................7

*Duchene v. Michael Cetta, Inc.*,
    2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009)................................11

*Easterling v. Connecticut D.O.C.*,
    265 F.R.D. 45 (D. Conn. 2010).....................................................................14

*Edwards v. North American Power & Gas LLC*,
    No. 3:14-cv-01714, 2018 WL 1582509 (D. Conn. March 30, 2018) ..............13

*Haddock v. Nationwide Fin. Serv. Inc.*,
    293 F.R.D. 272 (D. Conn. 2013)...................................................................15

*Kemp-Delisser v. Saint Francis Hospital and Medical Center*,
    No. 3:15-cv-1113, 2016 WL 10033380 (D. Conn. July 12, 2016)....................8

*Khait v. Whirlpool Corp.*,
    2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ..................................11

*Kiefer, et. al. v. Moran Foods, LLC, et. al.*,
    No. 12-CV-756 (D. Conn. Aug. 5, 2014) ......................................................11

*Maced. Church v. Lancaster Hotel, LP*,
    2011 U.S. Dist. LEXIS 62063 (D. Conn. June 9, 2011)....................................7

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010)..................................................................6, 7

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
    2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010)...........................10, 11

*Reyes v. Altamarea Grp., LLC*,
  2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) ............................................ 11

*Sewell v. Bovis Lend Lease LMB, Inc.*,
  2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ................................................ 11

*Sheppard v. Consol. Edison Co. of New York, Inc.*,
  2002 U.S. Dist. LEXIS 16314 (E.D.N.Y. Aug. 1, 2002) ............................................ 10-11

*Velez v. Majik Cleaning Serv.*,
  2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ............................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................................ 7

*Willix v. Healthfirst, Inc.*,
  2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .............................................. 11

**Statutes**

42 U.S.C. §§ 12112(a), (d)(4)(a)-(b) ...................................................................................... 2

42 U.S.C. §§ 2000ff-1(b)(2). ................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 1, 14
Fed. R. Civ. P. 23(a) ................................................................................................................ 13
Fed. R. Civ. p. 23(a)(4) ........................................................................................................... 14
Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 13, 14
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 12
Fed. R. Civ. P. 23(e)(1). .......................................................................................................... 12

**Other Authorities**

4 Newberg on Class Actions § 13.10 (5th Ed. 2017) ................................................................ 6

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

### I.   INTRODUCTION

Plaintiffs Lisa Kwesell, Christine Turecek, and Jason Schwartz ("Plaintiffs"), on behalf of themselves and the class they seek to represent, respectfully move this Court for preliminary approval of the class action settlement reached in this Action. The Stipulation and Agreement of Settlement ("Settlement" or "Agreement") is attached hereto as Exhibit 1. The Settlement fully and finally resolves Plaintiffs' claims against Yale University ("Yale" or "Defendant") arising out of Yale's operation of an employee wellness program, known as the Health Expectations Program ("HEP" or the "Program").  Plaintiffs alleged that the HEP violated the Americans with Disabilities Act ("ADA") and the Genetic Information Nondiscrimination Act ("GINA") because Plaintiffs and the class were required to either participate in the Program or pay a $25 per week opt-out fee.

As further described below, the Settlement provides substantial monetary benefits to all class members (without the need to submit any claim form) as well as significant programmatic relief, including cessation of the collection of HEP fees for four years, or until there is a change in law, as well as modifications to Yale's data-sharing practices. Specifically, Yale's business associate Healthmine will no longer send data to Yale's HEP vendor, TrestleTree, for purposes of health coaching, without express consent and Yale will instruct TrestleTree to purge data related to prior health coaching engagements from its records.

The proposed Settlement readily satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Settlement is a result of good-faith and arms' length negotiations after key discovery was conducted and after full briefing of cross-motions for summary judgment. The Settlement was reached following a full-day mediation with Linda Singer, Esq. of

JAMS, an experienced mediator with extensive experience in class litigation, as well as follow-up negotiations over multiple weeks. As more fully detailed below, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and in the best interests of the Class, and should therefore be preliminarily approved.  Defendant has no objection to the granting of this motion.

## II.    BACKGROUND

On July 16, 2019, Plaintiffs filed the original complaint on behalf of themselves and all current and former employees of Yale who are or were required to participate in the HEP or pay a fine of $25 per week between January 1, 2017 and present.[1]  Plaintiffs alleged that Yale's HEP violated the ADA and GINA because the Program was not "voluntary." The ADA and GINA generally prohibit employers from imposing medical examinations or inquiries or acquiring employees' genetic information unless those exams, inquiries, and genetic information acquisition are either job-related or part of a "voluntary" wellness program. 42 U.S.C. §§ 12112(a), (d)(4)(a)-(b), 2000ff-1(b)(2).

Plaintiffs alleged that Yale's Program was not "voluntary" because employees either had to participate and undergo medical exams, and, in some circumstances, medical inquiries, or pay $25 per week for opting-out of the Program, and because Yale released Plaintiffs' spouses' insurance claims data to a wellness vendor without Plaintiffs' or their spouses' authorization. On October 17, 2019, Plaintiffs filed an Amended Complaint, asserting the same causes of action and including additional allegations gathered during Plaintiffs' continued investigation. Yale answered Plaintiffs' Amended Complaint on November 15, 2019.

---

[1]    Tracking of compliance with the HEP's requirements did not begin until September 2018 and Yale ceased charging the opt-out fee on May 14, 2020.  Accordingly, the Parties have agreed that the class will be defined to include only those individuals who were eligible for the HEP between those periods and were either required to participate in the HEP or pay an opt-out fee.

On November 26, 2019, Defendant moved to stay this action because the Equal Employment Opportunity Commission ("EEOC") indicated that it would issue new regulations defining "voluntary" under the ADA and GINA, and Yale argued that those regulations would significantly impact the trajectory of the litigation.  Prior to Plaintiffs' filing a written response to the motion to stay, the Parties appeared for a previously scheduled Scheduling Conference on December 2, 2019. During that conference, the Court heard arguments on the Motion to Stay and denied the motion.  The Parties also discussed moving for summary judgment on the meaning of "voluntary" at the outset of the case in order to streamline additional proceedings.

On January 21, 2020, the Parties filed a Supplemental Rule 26(f) Report, that provided for cross-motions of summary judgment on the issue of voluntariness.  Prior to filing motions, the Parties engaged in targeted discovery. Plaintiffs issued Requests for Production, and Yale produced responsive documents. On January 30, 2020, Plaintiffs conducted the deposition of Hugh Penny as a corporate representative of Yale University with knowledge of the HEP. The Parties then filed cross motions for summary judgment. Briefing was completed on July 3, 2020.

On February 1, 2021, the Court ordered the parties to appear for oral argument on March 1, 2021. Prior to oral argument, the Parties met to discuss settlement. After meeting informally, the Parties determined that they should engage in formal mediation with the assistance of an experienced mediator and requested to postpone the oral argument until they had completed mediation. The Parties retained Linda Singer, Esq. of JAMS, an experienced mediator with vast experience in class actions, to assist with mediation. The Parties drafted confidential mediation statements for the mediator's review. On August 11, 2021, the Parties engaged in a full-day mediation session with Linda Singer, Esq. Although the Parties did not reach a resolution that day, they made significant progress and continued to communicate via Linda

Singer in the days that followed. On September 22, 2021, the Parties reached a settlement in principle and executed a term sheet.  During the following months, the parties negotiated the details of the Settlement, which is attached as Exhibit 1 hereto.

### III.    OVERVIEW OF THE SETTLEMENT

The Class is defined as:

All current or former Yale University employees who were required to participate in the HEP or pay an opt-out fee[2] from the time when Yale began tracking compliance with the HEP in September 2018 through May 14, 2020, the date Yale ceased collecting the opt-out fee.

The Settlement benefits are described below in further detail but include substantial monetary compensation to all class members (via automatic distribution) as well as programmatic changes. The duration of the programmatic changes outlined below will be four years from the date the Settlement is approved or until there is a change in the law that Yale reasonably interprets to permit the collection of fees associated with an employee wellness program, whichever is sooner. A change in the law shall be limited to a change in statutory language, agency regulations, or a decision of the United States Court of Appeals for the Second Circuit.

### A.  Monetary Relief

The Settlement provides a total settlement fund of $1.29 million.  This common fund shall be used to make monetary distributions to Class Members and to pay court-approved attorneys' fees and costs as well as service awards to the named Plaintiffs and other individuals

---

[2]     This includes employees in Local 34 UNITE HERE (the clerical and technical union), Local 35 UNITE HERE (the service and maintenance union), the Yale University Security Officers Association (YUSOA), and clerical and technical employees excluded from the bargaining unit. The Class membership will be determined based on data provided by HealthMine, a vendor who assisted in operating the HEP.  To avoid double payments, in the event that an individual was both a Yale employee and a spouse of another Yale employee, the individual will only be treated in one capacity, and that capacity will be determined by Healthmine's data.

named in the Amended Complaint. The Settlement fund shall provide a payment to all Class

Members, including those who paid no fees but who Plaintiffs allege participated in Yale's HEP

to avoid the monetary penalty.  Defendant shall bear the costs of administering the Settlement.

As detailed in the Plan of Allocation, each Class Member who paid fees will receive a

percentage of the amount deducted from their pay for those fees.  This percentage is currently

estimated to be 50% of the total amount paid in fees, but will ultimately depend on the final data

regarding Class Member participation in the HEP provided by Healthmine, the number of Participating

Class Members (those who do not opt-out) and the amounts awarded for attorneys' fees and costs. Class

Members who attended health coaching will receive $225. Class Members whose spouses

attended health coaching will receive $50. Each Class Member who did not attend health

coaching but was deemed compliant with the HEP will receive $50. The recovery is additive in

nature such that Class Members who fall into multiple categories will receive the cumulative

value of all payments, except that individuals who receive $225 for their participation in health

coaching will not also receive $50 for being deemed compliant with the HEP.[3]

Plaintiffs are also seeking service awards for the named Plaintiffs of $5,000-10,000

depending on the extent of their engagement in the action as well as service awards of $1,000 for

other individuals whose names and stories were shared in the Amended Complaint.  Plaintiffs

will also seek attorneys' fees and costs.[4] The Settlement is not contingent on the approval of any

---

[3]     As noted in the proposed Settlement Agreement, Section 7.2, payments will be made without the use of a claim
form because payment amounts to be paid to Class Members are based on specific actions taken under the HEP,
which are also reflected in Yale's (or Yale's business associates') records.

[4]     A motion further detailing the attorneys' fees and costs incurred in this litigation will be filed along with
Plaintiffs' motion for final approval.  As reflected in Section 6.1 of the proposed Settlement, Plaintiffs will be
requesting attorneys' fees not to exceed $200,000, which is approximately 15.5% of the settlement fund and costs
not to exceed $10,000. The fees requested are significantly less that Plaintiffs' Counsel's lodestar, as will be
described in more detail in the forthcoming motion for attorneys' fees and costs.

specific amount of services awards, attorneys' fees or costs.  If the Court does not approve those awards in full, such funds will simply increase the amount to be disbursed among Class Members who paid opt-out fees in proportion to the share of opt-out fees each individual paid.

### B.  Injunctive/Programmatic Relief

Yale will stop the collection of HEP fees during the duration of the proposed Settlement. Yale will also direct Healthmine, one of its business associates, not to send data to TrestleTree for the purpose of health coaching referrals. Yale will direct TrestleTree to purge all data relating to completed prior health coaching engagements from its records.[5] For those individuals who are actively engaged in health coaching currently, TrestleTree will notify individuals in advance and give them the option to have their records retained (or purged) and continue coaching (or not) as they desire, with no penalty for refusal.

### IV.    LEGAL STANDARD

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (internal quotations omitted). "Preliminary approval is thus the first stage of the settlement process, and the court's primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 Newberg on Class Actions § 13.10 (5th Ed. 2017).

Preliminary approval of a class action settlement is appropriate where the proposed settlement "is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement

---

[5]     TrestleTree also conducted health coaching that was not based on a referral through the HEP. Any records in connection with such coaching engagements are not subject to the Settlement.

appears to fall with the range of possible approval." *Menkes*, 270 F.R.D. at 101. The District

Court determines a settlement's fairness by examining the negotiating process leading up to the

settlement as well as the settlement's substantive terms. *D'Amato v. Deutsche Bank*, 236 F.3d 78,

85 (2d Cir. 2001). A "presumption of fairness, adequacy, and reasonableness may attach to a

class settlement reached in arm's-length negotiations between experienced, capable counsel,

after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.

2005); *see also Maced. Church v. Lancaster Hotel, LP,* 2011 U.S. Dist. LEXIS 62063 at *26 (D.

Conn. June 9, 2011) (there is a "strong presumption" in finding a settlement fair if it has been

negotiated at arms-length.).

Finally, there is a "strong judicial policy in favor of settlements, particularly in the class

action context." *Visa*, 396 F.3d at 117. Settlement of complex litigation is "encouraged by the

courts and favored by public policy." *Id.*

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS THE PRODUCT OF ARMS'-LENGTH NEGOTIATIONS AND IS FAIR, REASONABLE, AND ADEQUATE

### A. The Proposed Settlement is the Result of Non-Collusive, Arms'-Length Negotiations

The proposed Settlement is the product of serious, informed, non-collusive negotiations

between experienced, capable counsel, presided over by Linda Singer, Esq. of JAMS. Plaintiffs'

Counsel AARP Foundation and Garrison Levin-Epstein, Fitzgerald & Pirrotti, P.C. are both

highly respected and experienced counsel who have prosecuted numerous employment

discrimination and civil rights cases, including class actions. Yale's Counsel, Wiggin and Dana,

is a premier firm with vast litigation and negotiation experience. The Parties' counsel negotiated

at arm's-lengths with the aid of Linda Singer, a highly experienced and well-regarded mediator.

https://www.jamsadr.com/singer/. The use of a neutral mediator supports the non-collusive

nature of the proposed Settlement. *See, e.g.*, *Kemp-Delisser v. Saint Francis Hospital and Medical Center*, No. 3:15-cv-1113, 2016 WL 10033380, at *4 (D. Conn. July 12, 2016) (noting the use of a mediator when determining negotiations were arm's-length and non-collusive); *Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *14 (S.D.N.Y. June 7, 2011) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.").

The Parties' initial negotiations took several weeks. After providing confidential mediation statements to the mediator, the Parties engaged in an all-day mediation session. Although the Parties did not reach agreement during that session, they continued to negotiate through Linda Singer in the days following the mediation. On September 22, 2021, the Parties executed a term sheet. The Parties then worked over the following months to obtain the data needed for the Settlement and to finalize the terms.

### B. The Proposed Settlement is Fair and Reasonable, Particularly in Light of the Risks and Cost of Continued Litigation

The proposed Settlement is fair and reasonable in terms of recovery for Plaintiffs and the Class. First, the proposed Settlement provides significant monetary recovery for *all* Class Members, not just those that paid opt-out fees. This is a significant feature of the proposed Settlement because Plaintiffs maintain that those Class Members who participated in the HEP only because of the opt-out fee also suffered compensable damages. As outlined in the Plan of Allocation, the proposed Settlement provides for $1.29 million, minus any court awarded attorneys' fees and costs, to be disbursed among Class Members. Any Class Member who paid HEP fees will receive a substantial percentage of the amount deducted from their pay for those fees (the percentage is currently estimated at 50%, but will ultimately be determined by the formula in the Plan of Allocation). Each Class Member who participated in health coaching will receive $225,

each Class Member whose spouse attended health coaching will receive $50, and each class member who did not attend health coaching but was at any time deemed compliant with the HEP will receive $50.

Additionally, the proposed Settlement provides significant injunctive relief to all Class Members. First, Yale will cease the collection of HEP fees for a period of four years, or until there is a change in the law that permits wellness programs to collect fees. Next, Yale will direct Healthmine, one of its business associates, to no longer send data to TrestleTree for health coaching referrals without express prior consent, and TrestleTree will purge all data relating to prior completed health coaching engagements conducted as part of the HEP.

The proposed Settlement is especially fair, adequate, and reasonable when the risks and expense of continued litigation are considered. At the time the proposed Settlement was reached, the Parties had fully briefed cross-motions for summary judgment. If the Court were to have ruled in favor of Yale on those motions, the trajectory of this litigation would have been significantly altered. Depending on the Court's decision, class certification may have been impossible and/or Plaintiffs' case may have been dismissed in its entirety, with no avenue for even individual relief. Even if Plaintiffs were to have prevailed, an appeal would have been likely, and significant litigation at the district court level would have ensued. Plaintiffs would have had to conduct extensive discovery and file motions for class certification, which Yale would have opposed. If no settlement was reached, the case would have proceeded to trial, which is costly and time-consuming, further delaying recovery to Plaintiffs and the Class. A settlement now ensures certain and immediate recovery to Plaintiffs and Class Members.

### C.  The Requested Service Awards are Fair and Reasonable

The proposed Settlement provides service awards for each of the Plaintiffs, as well as those individuals who are named in the Amended Complaint. Lisa Kwesell and Christine Turecek would each receive $10,000 and Jason Schwartz would receive $5,000. Each individual named in the Amended Complaint would receive $1,000. Plaintiffs and Counsel believe that such awards are reasonable and appropriate given the Plaintiffs dedication to this action, their involvement in the Settlement process, and their valor in filing a suit against their current employer.

Courts in the Second Circuit routinely approve incentive payments in class action settlements as a way of compensating representatives for lending their names, reputations, and efforts to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging plaintiffs to act as "private attorneys general" in the enforcement of federal law. *See, e.g.*, *Aros v. United Rentals, Inc.*, 2012 U.S. Dist. LEXIS 104429, *8 (D. Conn. 2012) ("Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.") (citing *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see also Sheppard v. Consol. Edison Co. of New York,*

10

*Inc.*, 2002 U.S. Dist. LEXIS 16314, at \*19-20 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving incentive payments).

Courts in the Second Circuit have approved incentive payments in the range of the ones requested in this case. *See, e.g.*, *Kiefer, et. al. v. Moran Foods, LLC, et. al.*, No. 12-CV-756 (D. Conn. Aug. 5, 2014) (ECF No. 328) (granting final settlement approval , awarding incentive payment to main named plaintiff of $30,000 and to two named plaintiffs of $10,000 each); *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) (approving an award of $25,000); *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556 at \*40 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at \*5 (S.D.N.Y. Feb. 9, 2010) (finding individual incentive awards ranging up to $15,000 to be appropriate); *Reyes v. Altamarea Grp., LLC*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 and $5,000); *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at \*26 (E.D.N.Y. Jan. 20, 2010) (approving incentive awards of $15,000 and $10,000 to named plaintiffs).

The service award payments proposed here are within the range of previously approved awards in the Second Circuit and are reasonable. Plaintiffs regularly met with counsel, provided valuable information for use in the initial complaint and the Amended Complaint, helped counsel get in contact with additional Class Members to gather information, met with counsel on numerous occasions, met separately with the mediator prior to mediation, and attended the mediation. Plaintiffs were involved in this litigation throughout the 2 years the case was litigated. Moreover, without the assistance of Plaintiffs Kwesell and Turecek, it would have been

significantly more difficult, if not impossible, to litigate this case. Both Plaintiffs reached out to numerous other class members to encourage them to provide vital evidence to counsel. And, all individuals named in the Complaint sacrificed their privacy about sensitive medical and genetic information to help prove the Class' case.

## VI.    THE FORM AND MANNER OF NOTICE TO THE CLASS SHOULD BE APPROVED

The proposed Notice, Exhibit A to the Settlement Agreement, is the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B) and is "reasonable," Fed. R. Civ. P. 23(e)(1). The Notice is easily understandable. It includes a brief description of the claims and includes (1) contact information for Class Counsel to answer questions; (2) the address for a website, maintained by the Settlement Administrator[6] that will link to the Notice, the Amended Complaint, the Settlement Agreement, the order preliminarily approving the Settlement and any other important documents in the case; and (3) instructions on how to access the case docket. The Notice states the date of the final approval hearing and that the date may change without further notice to the Class. The Notice further advises Class Members that they should check the settlement website and/or the Court's PACER site to confirm that the date has not been changed. The Notice also explains the timeline and procedures for opting-out or objecting to the Settlement.

Additionally, the manner of disseminating the Notice is reasonable. The Settlement Administrator will send direct Notice to Class Members via first-class mail, postage prepaid. Because Yale has records relating to all Class Members, including address information (which will be updated by the Settlement Administrator prior to the sending of Notice), this Notice is

---

[6]    Under the Settlement, Yale has the option to administer the Settlement itself (in which case, any reference to Settlement Administrator shall mean Yale) or to retain a third-party Settlement Administrator to perform some or all of the Settlement Administration functions under the Settlement.

well-targeted to reach the Class Members and is the best practicable means under the circumstances.

### VII.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

The preliminary approval process is utilized to certify a settlement class when a class has not been previously certified by the court. *See, e.g.*, *Edwards v. North American Power & Gas LLC*, No. 3:14-cv-01714, 2018 WL 1582509, at *4, *5 (D. Conn. March 30, 2018) (noting that Rule 23's prerequisites apply "equally to conditional certification for a class for settlement purposes" and certifying proposed settlement class). Rule 23(a) sets forth four requirements for class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  Here, each of these requirements is readily met. Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3) and, as demonstrated below, those requirements are also satisfied.

#### A.  The Proposed Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)

First, the class is sufficiently numerous. According to records produced by Yale, the class includes roughly 6,000 individuals.

Second, commonality is also satisfied. Commonality is met when questions of law and fact are common as to all members of the Class. Here, common questions of law and fact include:

- whether Yale's acts violated the ADA;

- whether Yale's acts violated GINA; and

- whether the medical exams and inquires and requests for genetic information in Yale's HEP are voluntary.

Third, typicality is also satisfied. Rule 23 requires that the claims or defenses of the representative parties are typical of the claims and defenses of the class.  Here, Plaintiffs and the Class Members' claims arise from the same HEP policy and course of conduct on behalf of Yale, and Plaintiffs' claims are based on the same legal and remedial theories as the proposed Class and involve similar factual circumstances.

Fourth, adequacy is satisfied because the "representative parties will fairly and adequately protect the interests of the class." Fed. Rule 23(a)(4). Adequacy requires the "class representative [to] be a part of the class and possess the same interest and suffer the same injury as the class members." *Easterling v. Connecticut D.O.C.*, 265 F.R.D. 45, 51 (D. Conn. 2010). Courts must look to whether the "plaintiff's interests are antagonistic to the interest of other members of the class." *Id*. Here, Plaintiffs and the Class Members they seek to represent share an interest in vigorous prosecution of the claims they assert and Plaintiffs have no claims that are antagonistic to the Class. Further, Plaintiffs have retained counsel who are highly experienced in employment discrimination cases and class actions, and have therefore secured adequate representation.

While Defendant reserves its right to challenge all class certification criteria should the settlement not be approved, they do not object to certification of the class for settlement purposes only.

### B.  The Proposed Settlement Class Satisfies Federal Rule of Civil Procedure 23(b)(3)

Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are met here.

14

The predominance requirements "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Haddock v. Nationwide Fin. Serv. Inc.*, 293 F.R.D. 272, 281 (D. Conn. 2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In the Second Circuit, the requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id*. Thus, "if the liability issue is common to the class, common questions predominate over individual ones." *Id*. Here, common questions predominate over the individualized issues. Yale subjected all Class Members to the same policy, and generalized proof of Yale's policy and action would serve to resolve the Class' claims. In other words, the same set of facts give rise to liability. A class action is also a superior method of adjudication because if each Class Member pursued their own claims, they would be required to prove the same wrongdoing time and again, which would not be a prudent use of judicial resources.

### C.  Plaintiffs' Counsel Should be Appointed as Class Counsel

In appointing class counsel, the Court must consider: (1) the work counsel has done in identifying or investigation potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Here, proposed Class Counsel have undertaken significant efforts to investigate and identify the claims in this Action, including outreach and interviews with dozens of Class Members. Counsel are also highly experienced in litigating employment cases, as well as complex litigation and class action, including, specifically, legal issues involving the

voluntariness of employee wellness programs. Given this experience, counsel is highly knowledgeable about the applicable law. Finally, proposed Class Counsel has already committed significant resources to representing the Class and will continue to dedicate any resources necessary to represent that class throughout the administration of the proposed Settlement.

**VIII.    PROPOSED SCHEDULE OF EVENTS**

| | |
|---|---|
| **Mail Notice** | Within forty-five (45) days of the entry of the Preliminary Approval Order. |
| **Deadline to File Final Approval Papers and Fee Petition** | At least ninety-one (91) days from the date of initial Notice mailing. |
| **Deadline for Opting-Out of the Settlement** | Within sixty-three (63) days of the initial Notice mailing. |
| **Deadline for Objecting to the Settlement** | Within sixty-three (63) days of the initial Notice mailing. |
| **Reply to Objections (if any)** | No later than seven (7) days before the Final Approval Hearing. |
| **Final Approval Hearing** | Not earlier than ninety-eight (98) days after Notices are disseminated, subject to the Court's availability. |

**IX.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement, including the payment of Service Awards to Plaintiffs; (2) conditionally certify the proposed Class for settlement purposes only; (3) appoint Plaintiffs as the Class Representatives and Plaintiffs' Counsel as Class Counsel; (4) approve the form and manner of Notice; and (5) schedule a Final Approval Hearing.

Dated: March 4, 2022

Respectfully Submitted,

/s/ *Dara S. Smith*
Dara S. Smith (*pro hac vice*)
Elizabeth Aniskevich (*pro hac vice*)
Daniel B. Kohrman (*pro hac vice*)
AARP FOUNDATION

601 E Street, NW
Washington, DC 20049
Tel: (202) 434-6280
Fax: (202) 434-6424
dsmith@aarp.org
eaniskevich@aarp.org
dkohrman@aarp.org

Joshua R. Goodbaum (ct28834)
Joseph D. Garrison (ct04132)
GARRISON, LEVIN-EPSTEIN,
FITZGERALD, & PIRROTTI, P.C.
405 Orange Street
New Haven, CT 06511
Tel: (203) 777-4425
Fax: (203) 776-3965
jgoodbaum@garrisonlaw.com
jgarrison@garrisonlaw.com

Counsel for Plaintiffs

17