# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **LISA KWESELL; CHRISTINE TURECEK; AND JASON SCHWARTZ,** individually and on behalf all others similarly situated, | : : : : : | **CASE NO: 3:19-cv-01098 (KAD)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY,** | : | |
| | : | |
| **Defendant.** | : | |

### CLASS ACTION SETTLEMENT AGREEMENT

This Stipulation and Agreement of Settlement (the "Agreement" or "Settlement")is made and entered into between Lisa Kwesell, Christine Turecek, and Jason Schwartz (collectively "Plaintiffs"), on behalf of themselves and each of the Class Members (as defined below) and Yale University ("Yale" or "Defendant" and collectively with Plaintiffs the "Parties") and subject to the approval of the United States District Court for the District of Connecticut, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## 1.  RECITALS

WHEREAS a class action complaint was filed on July 16, 2019, in the United States District Court for the District of Connecticut alleging that aspects of Yale's Health Expectations Program ("HEP") violate the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Genetic Information Nondiscrimination Act ("GINA"), Pub. L. No. 110-233, 122 Stat. 881, by, inter alia, requiring participants to pay an opt-out fee if they wished not to participate and by disclosing spousal medical information without prior knowing, voluntary, written consent;

WHEREAS an amended class action complaint (the "Amended Complaint") was filed on October 17, 2019.  The Amended Complaint asserted the same basis for liability as the initial complaint, but also included additional information collected from Class Members through continued investigation;

WHEREAS Yale denied, and continues to deny, that any aspect of the HEP violates the ADA, GINA, or any other statute or regulation;

WHEREAS the Parties engaged in targeted discovery, including document production and one deposition, necessary to develop the factual record for summary judgment;

WHEREAS the Parties filed cross-motions for summary judgment, which were fully briefed;

WHEREAS the Parties engaged in a full-day mediation on August 11, 2021, with Linda Singer of JAMS, an experienced mediator with extensive experience in complex litigation;

WHEREAS the Parties reached an agreement-in-principle on September 22, 2021;

WHEREAS, the Parties recognize that, in the absence of an approved Settlement, they would face a long course of litigation, including extensive, costly and time-consuming further discovery, extensive motion practice (including a motion for class certification), trial, and potential appellate proceedings, that would consume time and resources and present each of them with ongoing litigation risks and uncertainties;

WHEREAS, the Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions set forth herein;

WHEREAS, based on their analysis and evaluation of a number of factors, and recognizing the substantial risk of continued litigation, including the possibility that the

litigation, if not settled now, might result in no recovery or a recovery that is less favorable to the Plaintiffs and Class Members, Counsel for Plaintiffs is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Settlement is in the best interests of the Class Members;

WHEREAS, it is the desire of the Parties to fully, finally and forever settle, compromise, and discharge all disputes and claims arising from or related to the litigation which exist between the Parties;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the litigation on the following terms and conditions:

1.    **DEFINITIONS**

1.1.    **Action** means *Kwesell v. Yale University*, 3:19-cv-01098 (KAD) (D. Conn.).

1.2.    **Agreement** means this settlement agreement and all attached exhibits.

1.3.    **CAFA Notice** means the notice required pursuant to 28 U.S.C. § 1715(b).

1.4.    **Class Members/Class** means all current or former Yale University employees who were required to participate in the HEP or pay an opt-out fee[1] from the time when Yale began tracking compliance with the HEP in September 2018 until May 14, 2020, when Yale ceased collecting the opt-out fee.

1.5.    **Court** means the United States District Court for the District of Connecticut.

1.6.    **Defendant or Yale** means Yale University.

---

[1]    This includes employees in Local 34 UNITE HERE (the clerical and technical union), Local 35 UNITE HERE (the service and maintenance union), the Yale University Security Officers Association (YUSOA), and clerical and technical employees excluded from the bargaining unit. The Class Members will be determined based on data provided by HealthMine, a vendor who assisted in operating the HEP.  To avoid double payments, in the event that an individual was both a Yale employee and a spouse of another Yale employee, the individual will only be treated in one capacity, and that capacity will be determined by Healthmine's data.

1.7.    **Defendant's Counsel** means the law firm of Wiggin and Dana LLP.

1.8.    **Effective** means that the Settlement has been finally approved by the Court and judgment has been entered and the period for appeal has expired without appeal therefrom or, if appeal is taken, the date on which all appeals (and/or any other efforts to challenge the Settlement) are exhausted and the Settlement is affirmed by the Court.

1.9.    **Final Approval Hearing** means the hearing during which the Court shall decide whether to finally approve the Settlement and make such other rulings as are contemplated by this Settlement or as modified by any subsequent mutual agreement of the Parties in writing and approved by the Court.

1.10.   **Final Approval Order** means the final order entered by the Court after the Final Approval Hearing.  The Final Approval Order must be substantively and substantially in the form set out in Ex. C.

1.11.   **HEP Fees** means opt-out fees collected by Yale in the course of administering the HEP.

1.12.   **Health Expectations Program or HEP** means the employee wellness program or employee health program that applied to certain of Yale's employees beginning in September 2018.

1.13.   **Healthmine** means Healthmine, Inc., a Yale Group Health Plan business associate responsible for administering the HEP.

1.14.   **Joint Press Release** means the press release agreed on and to be released by the Parties, attached as Ex. D.

1.15. **Named Individual** means a Class Member whose name appears in the Amended Complaint, other than Plaintiffs.

1.16. **Net Amount** means the difference between the Total Settlement Amount of $1,290,000 and the total of all Court-approved attorneys' fees, costs, and Service Awards.

1.17. **Notice** means the Notice of Class Action Settlement to be sent to Class Members, substantially as attached as Ex. A and as approved by the Court.

1.18. **Objection** means a Class Member's written signed statement, sent to the Settlement Administrator, indicating that the Class Member is objecting to the Settlement. Such statement must meet the criteria identified in Section 10 below.

1.19. **Objector** means anyone who files an objection to the Settlement.

1.20. **Opt-Out Period** means the period of sixty-three (63) days for Class Members to opt-out or submit objections. This period will begin to run on the date of the initial Notice mailing.

1.21. **Opt-Out Statement** means a Class Member's written, signed statement to the Settlement Administrator, that the Class Member is opting out of the Settlement. Such statement must meet the criteria identified in Section 9 below.

1.22. **Participating Class Members** means Class Members who do not opt out of the Settlement.

1.23. **Plaintiffs** means Lisa Kwesell, Christine Turecek, and Jason Schwartz.

1.24. **Plaintiffs' Counsel** means attorneys at AARP Foundation, and the law firm of Garrison, Levin-Epstein, Fitzgerald, and Pirrotti, P.C.

**1.25.** **Preliminary Approval Order** means the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing Notice, and the time period for, and the manner of, opt-outs and objections. The Preliminary Approval Order shall be substantively substantially in the form set out in Ex. B.

**1.26.** **Public Statement** means a communication reasonably anticipated to be widely disseminated, including communications with press or media entities and social media posts, and not including communications with the AARP Foundation Board of Directors or statements made in the context of collective bargaining negotiations.

**1.27.** **Released Claims** means the claims described in Section 12 below.

**1.28.** **Service Awards** means the awards approved by the Court for Plaintiffs and the Named Individuals.

**1.29.** **Settlement Administrator** means the entity selected to perform the settlement administration duties enumerated in this Agreement. The Settlement Administrator will be Yale unless Yale, in its sole discretion, determines that a third-party entity is necessary to administer the Settlement. Throughout this Agreement, if a reference is made to the Settlement Administrator, such reference means Yale or the third-party administrator that it designates.

**1.30.** **Total Settlement Amount** means $1,290,000, the total amount allocated for monetary awards and Court-approved Service Awards, attorneys' fees, and costs.

**1.31.** **TrestleTree** means TrestleTree, Inc., a Yale Group Health Plan business associate responsible for administering health coaching as part of the HEP.

2.      **PARTIES' AUTHORITY**

2.1.    All Parties have been represented by counsel throughout all negotiations which preceded the execution of this Agreement and this Agreement is made with the consent and advice of counsel. Plaintiffs' Counsel represent that the terms and conditions of this Settlement are fair, reasonable, adequate, beneficial to and in the best interest of Plaintiffs and Class Members. Plaintiffs and Plaintiffs' Counsel represent that they are fully authorized to enter into this Agreement and to bind the Class Members to the terms and conditions thereof.

2.2.    All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

2.3.    It is agreed that because the Class Members are so numerous, it is impractical to have each member execute this Agreement. The Notice will advise all Class Members that the release described in this Agreement will bind them, with or without additional action by them, unless they request exclusion from the Settlement, and that the release will have the same force and effect as if this Agreement were executed by each Class Member.

2.4.    The Agreement will be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

3.      **GENERAL TERMS**

3.1.    **Full resolution.** The Parties desire to fully, finally, and forever settle, compromise and discharge all disputes and claims arising from or related to this

Action, which exist between them, and between the Class Members and the Defendant. In exchange for (a) the dismissal of this Action with prejudice; (b) the settlement and release of all Released Claims as defined in Section 12; and (c) otherwise subject and pursuant to the terms and conditions of this Agreement, Yale agrees to pay a total of $1,290,000, which common fund shall be used to make monetary payments to Participating Class Members, as well as to pay attorney's fees, expenses and costs in amounts to be determined by the Court. Yale shall also separately pay any costs of administering the Settlement.

**3.2.** **Complete settlement and release.** The Parties intend that this Agreement constitute a full and complete settlement and release of all Released Claims, as defined in Section 12 against Yale and a dismissal of all pending actions covered by the Released Claims.

**3.3.** **Class treatment for settlement.** The Parties stipulate that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure for purposes of settlement.

**3.4.** **No admission of liability.** This Agreement reflects a compromise of disputed claims. Nothing in this Agreement shall be deemed or used as evidence of, or as an admission of, liability by Defendant, or of any fault or wrongdoing whatsoever, or as evidence that, or as an admission that, this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure for any purpose other than settlement.

**3.5.** **Cooperation.** The Parties agree to cooperate and shall aim to effectuate and implement all terms and conditions of this Agreement and to obtain the Court's

8

approval of this Agreement and all of its terms. The Parties, upon the request of the other, agree to perform such further acts and to execute and deliver such other documents, data, and information as are reasonably necessary to carry out the provisions of this Agreement.

4. **PROGRAMMATIC RELIEF**

4.1. **Duration:** The duration of the programmatic relief provided by this Settlement shall be four years from the Court's approval of the Settlement or earlier if there is a change in law that Yale University reasonably interprets to permit the collection of fees associated with non-participation or non-compliance with an employee wellness program or employee health program, whichever is sooner. A change in the law shall be limited to a change in statutory language, agency regulations, or a decision of the United States Court of Appeals for the Second Circuit.

4.2. **HEP Fees:** Yale University will cease collection of any HEP fees during the duration of the Settlement.

4.3. **Privacy Protections:**

4.3.1. Yale will direct Healthmine not to send data to TrestleTree for the purpose of health coaching referrals, except as indicated in Section 4.3.3 below. Yale will direct TrestleTree to purge all data relating to completed prior health coaching engagements from its records. Such purging shall be completed within a reasonable time and no later than thirty (30) days after such direction is provided by Yale. For those individuals who are actively engaged in health coaching currently, TrestleTree will notify individuals

9

in advance and give them the option to have their records retained (or purged) and to continue coaching (or not) as they desire.

**4.3.2.**   If a health coach entered a note in the patient's electronic medical record, that note (which is not part of TrestleTree's records) will not be purged.

**4.3.3.**   TrestleTree also provides coaching outside of the context of the HEP. Records associated with coaching outside the HEP will not be affected by this Agreement.

**4.3.4.**   Yale will otherwise retain the right to use business associates (including Healthmine, TrestleTree or others) in connection with the management of the Yale Group Health Plan, including for data analysis and to send reminders regarding recommended health activities. Reminders will not indicate that any activity is mandatory or that failure or refusal to complete it will result in any monetary penalty.  Additionally, in the future, if an individual elects to participate in health coaching, they may request that TrestleTree be provided access to their health information, including information possessed by Healthmine or in their electronic medical record. In such event, those records would not be subject to the purging requirement discussed above.

**5.   MONETARY RELIEF**

**5.1.**   **Payment:** Within twenty-eight (28) calendar days after the Final Approval Order becomes Effective, the Settlement Administrator will distribute the Total Settlement Amount of $1,290,000 in accordance with the plan of allocation, as described below.

**5.2.** **Total Settlement Amount Allocation:** The Total Settlement Amount will be allocated as follows:

 **5.2.1.** Plaintiffs and Named Individual Service Awards as described in Section 5.3.6 and approved by the Court.

 **5.2.2.** Attorneys' fees and costs as described in Section 6 and approved by the Court.

 **5.2.3.** The Net Amount shall be equal to the total settlement fund of $1,290,000 minus the amounts approved for Named and Individual Service Awards and attorneys' fees and costs. The Net Amount shall be allocated among the Participating Class Members according to the plan set forth in Section 5.3 and distributed as set forth herein and pursuant to orders of the Court.

**5.3.** **Plan of Allocation for Individual Monetary Awards.** Each Participating Class Member will receive a monetary award as outlined below.

 **5.3.1.** Each Participating Class Member who **paid any HEP fees** will receive a percentage of the HEP fees deducted from their pay for these fees. This percentage is estimated to be 50% of the total amount paid in fees.  The percentage will be calculating by taking the Net Amount and subtracting from that amount the total payments provided for in Sections 5.3.2-5.2.5. (E.g., If the total amount remaining is equal to 52% of all opt-out fees paid by Participating Class Members, then each Participating Class Member will receive 52% of the opt-out fees they paid back.)

 **5.3.2.** Each Participating Class Member who **attended health coaching** will receive $225.00.

**5.3.3.**   Each Participating Class Member whose **spouse attended health coaching** will receive $50.00.

**5.3.4.**   Each Participating Class Member who **did not attend health coaching but was at any time deemed compliant with the HEP**, will receive $50.00. This includes any individuals who paid HEP fees at some point but were also deemed compliant for any time period before Yale stopped collecting fees under the HEP.

**5.3.5.**   **Additive nature of awards.** Participating Class Members who fall into multiple categories described in Sections 5.3.1-5.3.4 will receive the cumulative value of all payments to which they are entitled, except that individuals who receive $225 for their participation in health coaching ***will not also receive*** $50 for being deemed compliant with the HEP.

**5.3.6.**   **Service Awards.** At least seven (7) days before the Final Approval Hearing, Plaintiffs' Counsel shall apply to the Court to receive no more than the following amounts as Service Awards: $10,000 for Plaintiff Lisa Kwesell; $10,000 for Plaintiff Christine Turecek; $5,000 for Plaintiff Jason Schwartz; $1,000 for each Named Individual whose name appears in the Amended Complaint (10 individuals). These payments shall be in recognition of these individuals' services to the Class, and shall be in addition to the individual's recovery from the Net Amount. Should the Court award a lesser amount of Service Awards, the difference between these amounts and the amounts awarded for Service Awards shall be added to the Net Amount Yale University will not oppose Plaintiffs'

request for Court approval of Service Awards up to the amount specified herein.

**5.4.**   **Uncashed Checks.**  Settlement payments will be made by the Settlement Administrator via check.  In the event that a Participating Class Member fails to cash their Settlement check within 120 days of issuance, the check shall be void. Any amounts which are not successfully cashed shall be paid to the Connecticut Bar Foundation to fund the delivery of legal services to the poor and for law school scholarships. No amount shall revert to Yale.

**5.5.**   **Tax Treatment.** Plaintiffs and Class Members will be responsible for paying applicable taxes, if any, and no tax advice is being provided by any attorneys in this case.

**5.6.**   **Final Report by Settlement Administrator:** Within twenty-eight (28) calendar days after all disbursements of money required by the Settlement have been made, the Settlement Administrator shall provide Plaintiffs' Counsel with a final report on the disbursements of all funds.

**6.**   **ATTORNEYS' FEES AND COSTS**

**6.1.**   Plaintiffs' Counsel will petition the Court for an award of attorneys' fees not to exceed $200,000, which is approximately 15.5% of the Total Settlement Amount, and actual costs not to exceed $10,000. This shall fully compensate Plaintiffs' Counsel for the attorneys' fees and litigation costs incurred at any time in connection with the Litigation. Should the Court award a lesser amount of fees or costs, the difference between this amount and the amount awarded for fees and costs shall be added to the Net Amount.

13

**6.2.** Yale agrees that Plaintiffs and Plaintiffs' Counsel are entitled to an award of reasonable attorneys' fees and costs and shall not oppose Plaintiffs' Counsel's request for fees and cost up to the amount set forth above. The Parties agree that the full amount of attorneys' fees and costs awarded in this action shall be paid from the Total Settlement Amount.

**6.3.** The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.

**6.4.** Payment of Plaintiffs' Counsel's attorneys' fees and costs approved by the Court shall be made within twenty-eight (28) days after the Final Approval Order is Effective.

**7.** **FORM OF NOTICE**

**7.1.** **Notice:** All Class Members shall receive a Notice substantially identical to the form set forth in Exhibit A, attached hereto.

**7.2.** **No Claim Form:** This is an automatic distribution Settlement. Because the plan of allocation determines payment amounts to be paid to Class Members based on specific actions taken under the HEP, which are also reflected in the records of Yale or its business associates, there is no need for a claim form in order to administer this Agreement.

**7.3.** **Mail and website**: The Notice shall be sent by first-class mail. The Settlement Administrator shall maintain a website to allow Class Members to review the Notice and other important documents in this case.

**7.4.**   **Undelivered Notices:** The Settlement Administrator shall provide to Plaintiffs' Counsel and Defendant's Counsel, at least twenty-one (21) calendar days prior to the close of the Opt-Out Period, a list of Class Members to whom Notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

**7.5.**   **Mailing and Due Diligence Declaration:** Plaintiffs' Counsel shall provide the Court, before the Final Approval Hearing, a declaration from the Settlement Administrator, attesting to its due diligence and proof of mailing with regard to the mailing of the Notice.

**8.**     **SETTLEMENT ADMINISTRATION**

**8.1.**   **Settlement Administrator:** Yale University will administer the Settlement by performing all duties assigned to it herein, unless, in its sole discretion, it chooses to appoint a third-party settlement administrator to perform some or all of the administration tasks. If Yale appoints a third-party settlement administrator, it will do so at its own expense. In this event, the Parties will ensure the third-party settlement administrator performs all administration duties required by this Agreement, as well as any other additional duties that may be necessary.

**8.2.**   **Settlement Administrator's List of Duties:**

**8.2.1.**   **CAFA notice.** The Settlement Administrator will provide notice of the proposed Settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b), no later than ten (10) calendar days after the Court's Preliminary Approval Order of the Settlement.  The

Settlement Administrator will draft and prepare the CAFA notice in conformity with 28 U.S.C. § 1715.

**8.2.2.  Calculation and distribution of awards.** The Settlement Administrator will calculate and distribute all individual monetary awards, Court-approved Service Awards, attorneys' fees, and costs. Within fourteen (14) days after the Opt-Out Deadline, the Settlement Administrator shall prepare a report with a preliminary calculation of individual monetary awards, based on the assumption that the full amount of attorney's fees, costs and Service Awards requested by Plaintiff's Counsel are approved. Such report shall be transmitted to Plaintiff's Counsel. The final calculation of individual monetary awards cannot be performed until after the Final Approval Order is issued and the approved amount of attorney's fees, costs and Service Awards is known. The Settlement Administrator shall provide a supplemental report to Plaintiff's counsel with the final calculated amounts within fourteen (14) days after the issuance of the Final Approval Order. The Settlement Administrator shall distribute monetary payments to Participating Class Members within twenty-eight calendar (28) days after the Settlement becomes Effective.

**8.2.3.  Other duties.** The Settlement Administrator will perform other duties assigned in this Agreement and any other duties reasonably appropriate to carry out its responsibilities described in this Agreement and/or ordered by the Court.

**8.2.4.  Notice Procedures**

16

8.2.4.1.**Notice mailing:**  The Settlement Administrator will send the Notice to Class Members within forty-five (45) days of the entry of the Preliminary Approval Order.   Notice will be sent to Class Members via first-class mail.

8.2.4.2.**Website**:  The Settlement Administrator shall also maintain a secure website to enable Class Members to review the Notice and other important documents.

8.3.    **Costs**:  Yale University will incur all costs related to the administration of the Settlement.

## 9.    OPT-OUTS

9.1.    Class Members may request exclusion from the monetary portion of the Settlement by "opting-out" of the Settlement.

9.2.    The deadline for Class Members to opt-out of the Settlement shall be sixty-three (63) calendar days from the date of the initial Notice mailing ("Opt-Out Period"). To be considered timely, any opt-out request must be postmarked within sixty-three (63) days from the date of the initial Notice mailing.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether an Opt-Out Statement has been timely submitted.

9.3.    Any individual who chooses to opt-out must mail a written, signed statement to the Settlement Administrator indicating that the Class Member is opting out ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address, and telephone number of the individual to be valid. It must also contain the following words in order to be valid: "I decline to provide a release of claims and

instead elect to exclude myself from the monetary relief provision in the Settlement in *Kwesell v. Yale University*. That means I will not be entitled to any of the monetary proceeds of the Settlement."

**9.4.**    If the Settlement Administrator receives a statement it reasonably interprets to be intended as an Opt-Out Statement, but which does not meet the conditions described herein, it will notify the Class Member who submitted the statement that the Class Member has not effectively opted out of the Settlement and explain what the Class Member must do to effectively opt out.

**9.5.**    During the Opt-Out Period, the Settlement Administrator shall provide Plaintiffs' Counsel and Defendant's Counsel with copies of each Opt-Out request no later than five (5) business days after receipt thereof.

**9.6.**    The Settlement Administrator, shall, within five (5) business days after the end of the Opt-Out Period, email a final list of all Opt-Out Statements to Plaintiffs' Counsel and Defendant's Counsel. Should the Settlement Administrator receive any additional timely Opt-Out Statements after five (5) business days after the close of the Opt-Out period, it will email them to Plaintiffs' Counsel and Defendant's Counsel as soon as possible, but no later than within one (3) business day of receipt. The Settlement Administrator shall retain the stamped originals of all mailed Opt-Out Statements in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

**9.7.**    The Parties agree that the decision to opt out should be left to each Class Member. If contacted by a Class Member about opting-out, Plaintiffs' Counsel may direct the Class Member to the portion of the Notice or Settlement Agreement that

explains the process for opting-out. If Defendant's Counsel is contacted by Class

Members regarding opting-out of the Settlement, Defendant's Counsel shall refer

the call or communication to Plaintiffs' Counsel. In addition, at no time shall

Plaintiffs, Defendant, or their respective counsel, seek to solicit or otherwise

encourage Class Members or any other persons to submit Opt-Out Statements.  If

Defendant or its Counsel is contacted with general questions relating to the

Settlement, they shall refer Class Members to the settlement website and/or

Plaintiff's Counsel.

**10.    OBJECTIONS**

10.1.   Class Members who wish to present objections to the Settlement at the Final

Approval Hearing must do so in a written, signed statement delivered to the

Settlement Administrator. To be considered, such Objections must be mailed to

the Settlement Administrator, or filed with the United States District Court for the

District of Connecticut, no later than sixty-three (63) calendar days from the date

of the initial Notice mailing, the particular date of which will be specified in the

Notice.  The postmarked date of the objection shall be the exclusive means for

determining that an objection is timely.

10.2.   The objection statement must contain the name, address, and telephone number of

the Class Member to be valid.  If the Objector is represented by counsel, the

objection statement must also list the name, address and telephone number of that

counsel. The objection statement must set forth the legal and factual basis for the

objection. Class Members who fail to make objections in the manner specified

herein shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Agreement.

10.3.    If the Settlement Administrator receives any objections, it shall indicate on the original of any mailed objection or on the printed version of any emailed objection the date it was received, and shall send copies of each objection to Plaintiffs' Counsel and Defendant's Counsel by email not later than five (5) business days after receipt thereof. Plaintiffs' Counsel shall file the objections with the Clerk of Court within fourteen (14) days after the end of the Opt-Out Period. Should the Settlement Administrator receive any additional timely objections after the end of the Opt-Out Period, the Settlement Administrator will email those to Plaintiffs' Counsel and Defendant's Counsel as soon as possible, but no later than within one (3) business days. Plaintiffs' Counsel must promptly file each objection it receives from any source other than the Court.

10.4.    An objector who wishes to appear at the Final Approval Hearing must file with the Clerk of the Court and serve upon counsel a notice of intention to appear at the Final Approval Hearing ("Notice of Intention to Appear") no later than the deadline for the objection set forth in Section 10.1. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objector (or his/her counsel) shall present to the Court in connection with the Final Approval Hearing. The Notice of Intention to Appear must also list any other class settlements to which the individual has objected.  Any Class Member who files a Notice of Intention to Appear must be willing to promptly make themselves available for deposition by the Parties. If the Objector is represented

by counsel, the Notice of Intention to Appear must identify the name, address and phone number of Counsel. Any Class Member who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Notice and this Agreement, and who has not filed an objection in complete accordance with the deadlines and other specifications set forth in this Agreement and the Notice, shall, subject to the Court's final determination in the exercise of its discretion, be deemed to have waived their opportunity to speak or otherwise present any views at any Final Approval Hearing.

10.5.   Any lawyer representing a Class Member for the purpose of making an objection must also file a Notice of Appearance with the Court by the deadline for objection and must also serve copies by mail on counsel for the Parties.

10.6.   An objector may withdraw his/her objections at any time.

10.7.   Any individual who has requested exclusion by submitting a valid Opt-Out Statement may not also submit objections to the Settlement.

10.8.   Plaintiffs' Counsel and/or Defendant's Counsel should respond to any objections in the Final Approval Motion, any reply brief, and/or, if appropriate, a separate submission at least seven (7) days before the Final Approval Hearing.

10.9.   Provided that the Court's dismissal order is consistent with the terms and conditions of this Agreement, then Plaintiffs and Class Members who did not properly object to the Settlement and their counsel, as well as Defendant and its counsel, hereby waive any and all rights to appeal the dismissal order, including all rights to any post-dismissal proceeding and appellate proceeding, such as a

motion to vacate the dismissal, a motion for new trial, a motion under Federal Rule of Civil Procedure 60, and any extraordinary writ.[2] The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-dismissal proceedings. Notwithstanding the foregoing, Plaintiffs and their counsel do not waive their right to appeal any order regarding attorneys' fees or costs.  Should any such appeal be filed, however, the Settlement would not be Effective until thirty days after all appeals were exhausted.

10.10.  The Parties agree that the decision to object should be left to each Class Member. If contacted by a Class Member who wishes to object, Plaintiffs' Counsel may suggest that the individual obtain other counsel. Plaintiff's Counsel will not provide any substantive advice to objecting Class Members, nor provide specific referrals to other counsel, given that an Objector's interests are contrary to the interests of Plaintiffs and other non-objecting Class Members. If Defendant's Counsel is contacted by a Class Member who wishes to object, Defendant's Counsel shall recommend that the individual consider consulting counsel of their choosing. In addition, at no time shall Plaintiffs, Defendant, or their respective counsel seek to solicit or otherwise encourage Class Members or any other persons to object to the Settlement.

## 11.   PRELIMINARY AND FINAL APPROVAL

11.1.  Within fourteen (14) days after this Settlement Agreement is executed by all Parties, Plaintiffs' Counsel shall submit to the Court a Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion"). The Preliminary

---

[2]   Notwithstanding the foregoing, the Effective date shall still not run until the deadline for appeal has expired without appeal therefrom.

Approval Motion shall seek conditional certification of the Class and the setting of dates for opt-outs, objections, and a Final Approval Hearing and shall present the [Proposed] Preliminary Approval Order attached hereto as Ex. B.

11.2.   Plaintiffs' Counsel shall seek to obtain from the Court a Final Approval Order, substantially in the form attached as Ex.  by motion. The Final Approval Motion shall, among other things, seek: (a) final certification of the Class for purposes of settlement; (b) final approval of the Settlement as fair, adequate, reasonable, and binding on all Class Members who have not opted-out; (c) approval of an award of attorneys' fees and costs to be made from the Settlement fund; (d) approval of service awards to Plaintiffs and the Named Individuals to be made from the Settlement fund; and (e) an entry of judgment in accordance with this Settlement. The Final Approval Motion shall be filed at the Plaintiff's convenience, but not earlier than ninety-one (91) days after the date of the initial mailing of Notice.

11.3.   The Final Approval Hearing shall be held at the Court's convenience, but not earlier than ninety-eight (98) calendar days after the initial mailing of Notices.

11.4.   In the event that the Court voids any provision of the Settlement Agreement and/or any of its exhibits, the Settlement Agreement and any orders effectuating it shall be void.  If they wish, the Parties shall renegotiate the Settlement to the mutual satisfaction of both Parties before resubmitting to the Court for approval. No Party shall be bound by the terms of the Settlement if the Court voids any provision of the Settlement and/or any of its exhibits, and the Parties fail to come to a written, binding agreement submitted to the Court that addresses the Court's order.

23

12.    **RELEASE**

**12.1.**    By operation of this Agreement and the Final Approval Order, and except as to

such rights or claims as may be created by this Agreement or those nonwaivable

by law, Plaintiffs and all Participating Class Members, and their current, former

and future heirs, spouses, executors, administrators, agents, and attorneys, shall

hereby irrevocably and unconditionally forever and fully release and covenant not

to sue or otherwise pursue claims that were raised in this lawsuit or which could

have been raised in this litigation relating to the operation of HEP ("Released

Claims"), against Yale, and its current and former affiliates, assigns, employees,

agents, officers, directors, and business associates involved in administering the

HEP.

13.    **PUBLICITY**

**13.1.**    Counsel for the Parties have drafted and agreed to the attached Joint Press Release

announcing the Settlement (Ex. D). Plaintiffs' and Defendant's Counsel will issue

this release within three (3) days of the filing of the Motion for Preliminary

Approval.

**13.2.**    All subsequent Public Statements (defined in Section 1.26) by Counsel for the

Parties and by the Plaintiffs will be materially consistent with the Joint Press

Release.

14.    **INTERPRETATION AND ENFORCEMENT**

**14.1.**    This Agreement constitutes the entire agreement between the Parties with regard

to the subject matter contained herein, and all prior and contemporaneous

negotiations and understandings between the Parties shall be deemed merged into this Agreement.

14.2. Upon execution of this Agreement by the Parties and their counsel, this Agreement shall be binding upon the Parties unless the Court fails to approve the Agreement as set forth herein or the Agreement does not become Effective.

14.3. The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement. Notwithstanding the foregoing, the Parties acknowledge that minor changes to the dates or timeline specified herein are not material and agree to work together should such change be necessary. However, under no circumstances shall any payment under this Settlement be owed unless and until the Settlement is Effective.

14.4. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

14.5. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Connecticut, without regard to its choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

14.6.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby for four years following the Court's entry of a Final Approval Order. Should the Parties at any time have a dispute regarding the interpretation or requirements of this Agreement, they shall first mediate any dispute prior to requesting intervention by the Court. The Parties shall mediate with Linda Singer if she is available or another JAMS mediator if she is not.

14.7.  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by, or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.8.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

14.9.  Any Party may execute this Agreement by transmitting their signature page via facsimile or email. Any signature made and transmitted by facsimile or email for

26

the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party.

15.  **DUTIES FOLLOWING APPROVAL**

15.1.  In connection with the Final Approval by the Court of this Agreement, Class Counsel, and Counsel for Defendant shall submit a proposed Final Approval Order and judgment, substantially in the form set out in Ex. C:

15.1.1. Granting Final Approval to the Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

15.1.2.  Granting final certification of the Class for settlement purposes;

15.1.3.  Dismissing the Civil Action with prejudice and permanently barring all Participating Class Members, including the Plaintiffs, from prosecuting against any Released Parties any of the Released Claims.

[SIGNATURES ON FOLLOWING PAGE]

Each of the Parties, and their counsel, have executed Agreement, individually or by their duly authorized officer, as of the day and year set forth below:

**PLAINTIFFS**

Dated: March 3, 2022

_____
Lisa Kwesell, Plaintiff

Dated: 3-3-2022

_____
Christine Turecek, Plaintiff

Dated:

_____
Jason Schwartz, Plaintiff

Dated:

_____
Dara Smith
AARP Foundation
Counsel for Plaintiffs

**YALE UNIVERSITY**

Dated:

_____
John Whelan
Vice President, Human Resources
Yale University

Dated:

_____
Kim Rinehart
Wiggin and Dana LLP
Counsel for Yale University

18

Each of the Parties, and their counsel, have executed Agreement, individually or by their duly authorized officer, as of the day and year set forth below:

**PLAINTIFFS**

Dated: _____
　　　　　　　　　　　Lisa Kwesell, Plaintiff

Dated: _____
　　　　　　　　　　　Christine Turecek, Plaintiff

Dated:Jason Schwartz 03/03/2022 _____
　　　　　　　　　　　Jason Schwartz, Plaintiff

Dated: _____
　　　　　　　　　　　Dara Smith
　　　　　　　　　　　AARP Foundation
　　　　　　　　　　　Counsel for Plaintiffs

**YALE UNIVERSITY**

Dated: _____
　　　　　　　　　　　John Whelan
　　　　　　　　　　　Vice President, Human Resources
　　　　　　　　　　　Yale University

Dated: _____
　　　　　　　　　　　Kim Rinehart
　　　　　　　　　　　Wiggin and Dana LLP
　　　　　　　　　　　Counsel for Yale University

Each of the Parties, and their counsel, have executed Agreement, individually or by their duly authorized officer, as of the day and year set forth below:

**PLAINTIFFS**

Dated: _____
                    Lisa Kwesell, Plaintiff


Dated: _____
                    Christine Turecek, Plaintiff


Dated: _____
                    Jason Schwartz, Plaintiff


Dated: _____
                    Dara Smith
                    AARP Foundation
                    Counsel for Plaintiffs


**YALE UNIVERSITY**

Dated: _____
                    John Whelan
                    Vice President, Human Resources
                    Yale University


Dated: _____
                    Kim Rinehart
                    Wiggin and Dana LLP
                    Counsel for Yale University

Each of the Parties, and their counsel, have executed Agreement, individually or by their duly authorized

officer, as of the day and year set forth below:

**PLAINTIFFS**

Dated: _____

                        Lisa Kwesell, Plaintiff

Dated: _____

                        Christine Turecek, Plaintiff

Dated: _____

                        Jason Schwartz, Plaintiff

Dated: _____

                        Dara Smith
                        AARP Foundation
                        Counsel for Plaintiffs

**YALE UNIVERSITY**

Dated: 3/3/2022 _____

                        John Whelan
           Vice President, Human Resources
                     Yale University

Dated: 3/4/22 _____

                        Kim Rinehart
                    Wiggin and Dana LLP
                  Counsel for Yale University

27