## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| **LISA KWESELL; CHRISTINE** | : | **CIVIL ACTION NO.:** |
| **TURECEK; AND JASON SCHWARTZ**, | : | |
| **individually and on behalf all others** | : | **3:19-cv-01098 (KAD)** |
| **similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | *CLASS ACTION* |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY,** | : | |
| | : | |
| **Defendant.** | : | |

---

**November 15, 2022**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND ........................................................................................................2

     A.     Factual and Procedural Background ........................................................3

III.   THE PROPOSED SETTLEMENT ..........................................................................7

     A.     The Settlement Provides Exceptional Programmatic and Monetary
Relief ................................................................................................................ 2

           1.     The Programmatic Relief Eliminates Opt-Out Fees During
the Settlement and Modifies Yale's Health Data Transfer
Procedures ................................................................................................2

           2.     The Monetary Relief Compensates All Class Members for Their
Experience with the HEP, Not Just Those Who Paid Opt-Out Fees ...........3

IV.   THE NOTICE PROGRAM ......................................................................................3

     A.     The Notice Program Comported with All Requirements ........................................3

           1.     The Administrator Adhered to the Class Notice Requirements
and Class Members Reacted Positively to the Settlement .........................3

           2.     CAFA Notice Requirements Were Satisfied ...............................................4

V.     ARGUMENT .............................................................................................................4

     A.     The Best Practicable Notice of Settlement Has Been Provided ............................4

     B.     The Settlement is Procedurally and Substantively Fair ..........................................6

           1.     Legal Standard ..........................................................................................6

           2.     The Settlement was the Result of Arm's Length Negotiations
and is Procedurally Fair ............................................................................7

           3.     The Settlement is Substantively Fair ..........................................................8

                  i.     The Complexity, Expense, and Likely Duration of the
Litigation ..........................................................................................8

i

ii.    The Reaction of the Class to the Settlement ...................................9

iii.   The Stage of the Proceedings and the Amount of
       Discovery Completed....................................................................10

iv.    The Risks of Establishing Liability and Damages........................11

v.     The Risks of Maintaining a Class Action Through Trial...............12

vi.    Defendant's Ability to Withstand a Greater Judgment.................13

vii.   The Range of Reasonableness of the Settlement  .........................13

C.    The Court Should Certify the Settlement Class as Final ....................................... 14

VI.    CONCLUSION...........................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Castagna v. Madison Square Garden, L.P.*,
No. 09-CV-10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ...................................... 7

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012)............................................................................. 10

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),....................................................................................... 1, 7, 13

*Collins v. Olin Corp.*,
No. 3:03-cv-945, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) .................... 6-7, 9, 11, 12

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)......................................................................................... 6, 13

*Edwards v. N. Am. Power & Gas, LLC*,
No. 3:14-cv-1714, 2018 WL 3715273 (D. Conn. Aug. 3, 2018)...................................... 9

*In re AOL Time Warner, Inc.*,
No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................ 9-11, 13

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................................ 8, 10

*In re Frontier Commc'ns. Corp.*,
No. 3:17-cv-1617, 2022 WL 4080324 (D. Conn. May 20, 2022). ............................ 12, 13

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006). .................................................................................... 12

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y 1993) ....................................................................................... 13

*In re Painewebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)............................................................................................. 6

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1993). .................................................................................... 10

*In re Prudential Sec. Inc. Ltd. P'ship. Litig.*,
164 F.R.D. 362 (S.D.N.Y. 1996) ...................................................................................... 4

*Jermyn v. Best Buy Stores, L.P.*,
No. 08 CIV. 00214, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)....................................5

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)..............................................................................................6

*Macedonia Church v. Lancaster Hotel, LP*,
No. 05-0153, 2011 WL 2360138 (D. Conn. June 9, 2011)..................................................6

*Menkes v. Stolt-Neilsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010)..........................................................................................7

*Sykes v. Harris*,
No. 09 Civ. 8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016)....................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
396 F.3d 96 (2d Cir. 2005)................................................................................................5

*Weigner v. The City of New York*,
852 F.2d 646 (2d Cir.1988)...............................................................................................5

**Statutes**

28 U.S.C. § 1715(d). ...........................................................................................................4

**Rules**

Fed. R. Civ. P. 23..........................................................................................................4, 6

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiffs Lisa Kwesell, Christine Turecek, and Jason Schwartz ("Plaintiffs"), on behalf of themselves and the class they seek to represent, respectfully move this Court for final approval of the Settlement[1] reached in this action. This exceptional Settlement provides robust programmatic and monetary relief to all Class Members and is the product of hard-fought litigation and arm's length negotiations.

The proposed Settlement readily satisfies the requirements of Rule 23 and the factors articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which provides the prevailing test used by courts in this Circuit to determine whether a settlement is fair, reasonable, and adequate. The Settlement, which the Court preliminarily approved on June 14, 2022, was reached after full briefing on cross-motions for summary judgment, and with the assistance of a highly respected private mediator. The Class has overwhelmingly endorsed the Settlement, with *only two* of the 6,262 Class Members who received Notice opting-out and *zero* objecting, providing further support for final approval.

As more fully described below, because the Settlement is fair, adequate, and reasonable, and provides excellent relief to the Class, Plaintiffs respectfully request that the Court finally certify the Class for settlement purposes, including the appointment of Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel, and grant final approval of the Settlement.

---

[1]    Words capitalized herein and not otherwise defined have the meaning ascribed to them in the Class Action Settlement Agreement previously filed with the Court. ECF No. 84-2.

II.     **BACKGROUND**

A.     **Factual and Procedural Background**

As described more fully in Plaintiffs' Preliminary Approval Motion and Motion for Approval of Attorneys' Fees, Costs, and Service Awards, this litigation, which presented complex issues of first impression, was initially filed in July 2019 after extensive investigation. *See* ECF No. 84-1 at 2-4.  The litigation was hard fought over the next two years as the Parties argued a motion to stay, engaged in targeted discovery, and fully briefed cross-motions for summary judgment. *Id*. Prior to oral argument on the pending summary judgment motions, the Parties commenced settlement discussions, and engaged Linda Singer, Esq., a well-respected and experienced private mediator at JAMS, to oversee the negotiations. *Id.* at 3-4; 7-8. The Parties attended a full-day mediation session on August 11, 2021. *Id.* Although no settlement was reached that day, the Parties continued to negotiate through Linda Singer over the following days and weeks and reached a settlement in principle on September 21, 2021. *Id*.

III.    **THE PROPOSED SETTLEMENT**

A.     **The Settlement Provides Exceptional Programmatic and Monetary Relief**

The Settlement provides two important forms of relief: (1) programmatic relief that stops the collection of the opt-out fee and implements changes to Yale's health data sharing practices and (2) monetary relief that provides recovery for Class Members with both economic and non-economic damages.

1.     **The Programmatic Relief Eliminates Opt-Out Fees During the Settlement and Modifies Yale's Health Data Transfer Procedures**

Most importantly, the Settlement provides for the cessation of opt-out fees associated with the Health Expectations Program ("HEP" or the "Program") for the next four years, or until there is a change in law. This relief was the main goal of Plaintiffs and keeps nearly one million

dollars a year in the pockets of Yale employees. The Settlement also requires Yale to purge health data previously collected in connection with health coaching and going forward requires Yale to obtain employee consent before transferring such health data. ECF 84-2 at ¶ 4.3. The modification of Yale's health data practices is an important component of this Settlement because it ensures Class Members' privacy and autonomy over their health information.

<strong>2.     The Monetary Relief Compensates All Class Members for Their Experience with the HEP, Not Just Those Who Paid Opt-Out Fees</strong>

The Settlement also resulted in a common fund of $1.29 million, which will be used to make monetary distributions to all Class Members. Those Class Members who paid opt-out fees will recover approximately 49% of the fees they paid, and those who participated in the Program will receive a payment based on the HEP activities they completed. Class Members who attended health coaching will receive $225. Class Members whose spouses attended health coaching will receive $50, and those who did not attend health coaching but were deemed compliant with the HEP will receive $50. The recovery is additive in nature, so Class Members who fall into multiple categories will receive the cumulative value of all payments (except that individuals who receive $225 for their participation in health coaching will not also receive $50 for being deemed compliant with the HEP). *Id.* at ¶ 5.3.

## IV.     THE NOTICE PROGRAM

### A.     The Notice Program Comported with All Requirements

<strong>1.     The Administrator Adhered to the Class Notice Requirements and Class Members Reacted Positively to the Settlement</strong>

The Parties have followed the Court-approved notice plan, as set forth in the Settlement and the Preliminary Approval Order. *See* ECF 84-2 at ¶¶ 7.1-7.5; 97 at 4-5. On July 29, 2022, the Settlement Administrator, RG/2 Claims Administration LLC ("RG/2"), mailed 6,313 Notices

3

and launched the Settlement website. *See* Decl. of Teresa Y. Sutor of RG/2 at ¶ 10 ("Sutor Decl.") attached as Exhibit 1 to Decl. of Elizabeth Aniskevich in Support of Final Approval and Attorneys' Fees, Costs, and Service Awards (hereinafter "Aniskevich Decl."). Of the 6,313 Notices, 6,262 (99.19%) of Notices were successfully delivered. *Id*. The Settlement Administrator followed best practices to ensure that the Notice reached as many Class Members as feasible, including two rounds of skip-tracing for returned Notices. *Id*. Of the 6,262 Class Members who received Notice, only *two* opted-out and *none* objected. *See* Opt-Out Requests, Ex. 2 to Aniskevich Decl. This means 99.97% of the notified Class Members are participating in the Settlement. This overwhelming endorsement by the Class strongly supports this motion.

### 2.      CAFA Notice Requirements Were Satisfied

On June 10, 2022, Yale satisfied its obligation to serve the appropriate settlement notification documents on the relevant federal and state attorneys general. Sutor Decl. at ¶ 4. The Final approval hearing, set for November 22, 2022, is being held more than 90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met. 28 U.S.C. § 1715(d).

## V.      ARGUMENT

### A.      The Best Practicable Notice of Settlement Has Been Provided

In a class action settlement of this kind, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To satisfy due process, class notice should be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. P'ship. Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

In the Second Circuit, a settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005).

The Court approved the substance of the Notice and the Notice program in the Preliminary Approval Order. ECF No. 97 at 4-5. The Parties have since implemented the Notice Program to ensure that Class Members received the best notice practicable and were informed of their rights. The Settlement Administrator created a Settlement website that went live on July 29, 2022. Sutor Decl. at ¶ 5. That same day, the Settlement Administrator mailed 6,313 Notices, of which only 51 were returned as undeliverable and 6,262 (99.19%) were successfully delivered. *Id*. at ¶ 10. The addresses for many undeliverable Notices were skipped-traced two times and Notices were mailed two times, *id*., demonstrating that RG/2 was reasonable and diligent in trying to deliver Notice to those Class Members. *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir.1988) ("Due process is satisfied even if all class members do not receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform the persons affected"). Thus, because the Notice was issued in form substantially identical to the form approved by the Court, and Parties successfully implemented the approved Notice Program, the Notice satisfies Rule 23 and due process, and was the best practicable notice under the circumstances.

**B.      The Settlement is Procedurally and Substantively Fair**

**1.      Legal Standard**

"Federal courts have adopted a 'strong judicial policy in favor of settlements, particularly in the class action context." *Collins v. Olin Corp.*, No. 3:03-cv-945, 2010 WL 1677764, at *1, (D. Conn. Apr. 21, 2010) (quoting *In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). Federal Rule of Civil Procedure 23(e)(2) requires any class action settlement be reviewed by a district court and approved only "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In addition, a fair settlement may not have been the product of collusion. *Collins*, 2010 WL 1677764, at *1, (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

"To determine the fairness of a proposed settlement, a Court must examine both its procedural and substantive fairness." *Collins*, 2010 WL 1677764, at *1. Procedural fairness looks to the negotiating process by which the settlement was reached. *Id.*; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the . . . settlement's substantive terms."); *see also Macedonia Church v. Lancaster Hotel, LP*, No. 05-0153, 2011 WL 2360138, at *10 (D. Conn. June 9, 2011) (there is a "strong presumption" in finding a settlement fair if it has been negotiated at arm's length). To decide if the substantive terms of the proposed settlement are fair, the Court must consider the nine *Grinnell* factors: (1) the complexity, expense, and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the

settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

### 2.    The Settlement was the Result of Arm's Length Negotiations and is Procedurally Fair

Here, the Settlement is presumptively procedurally fair because it has been negotiated at arm's length by experienced and informed counsel and with the help of a well-respected mediator. *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (noting that "the Second Circuit has recognized a presumption of fairness, reasonableness, and adequacy as to proposed settlements" where the settlement resulted from arm's length negotiations and plaintiffs' counsel possessed requisite experience and ability); *Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211, 2011 WL 2208614, at *5 (S.D.N.Y. June 7, 2011) ("Arm's length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process."). Class Counsel is experienced in litigating employment and civil rights cases, and AARP Foundation attorneys are particularly versed in wellness programs and litigation surrounding wellness programs, having successfully challenged prior EEOC regulations governing wellness programs. *See* Aniskevich Decl. at ¶¶ 4-7; Goodbaum Decl.[2] at ¶¶ 4-6. Furthermore, Class Counsel was sufficiently familiar with the facts and legal claims. They undertook an extensive investigation of the claims alleged, engaged in targeted discovery, and briefed summary judgment. Aniskevich Decl. at ¶¶ 9-18. As a result, Class Counsel was able to engage Yale's counsel in meaningful settlement negotiations. *See Collins*, 2010 WL 1677764, at *2 (settlement presumptively procedurally fair where plaintiffs' counsel developed a sufficient level of familiarity with the case as to engage opposing counsel in

_____

[2] The Goodbaum Declaration is attached as Exhibit 6 to the Aniskevich Decl.

settlement negotiations). Moreover, the settlement negotiations were at arm's length and adversarial. After an initial conversation between the Parties about settlement, the Parties engaged a private mediator, Linda Singer, Esq. of JAMS, to assist with discussions. Aniskevich Decl. at ¶ 20. After a full day of mediation, the parties still had not reached an agreement but they continued to negotiate in the weeks that followed, and reached a settlement in principle on September 22, 2021. *Id*. at ¶¶ 25-27. Because the settlement negotiations were conducted by experienced and informed counsel at arm's length, facilitated with the assistance of a respected mediator, and because there is no evidence of collusion, the Settlement is procedurally fair.

### 3. The Settlement is Substantively Fair

The Settlement is fair, reasonable, and adequate as demonstrated by consideration of each *Grinnell* factor. Each factor is examined in more detail below.

#### i. The Complexity, Expense, and Likely Duration of the Litigation

The first *Grinnell* factor weighs in favor of approval because this class action presented complex and novel issues, and expensive and lengthy litigation was likely absent a settlement. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case presented an issue of first impression in this District: the interpretation of the term "voluntary" under the Americans with Disabilities Act ("ADA") and the Genetic Information Nondiscrimination Act ("GINA") following the vacatur of the prior EEOC regulations defining the term. Because there was no governing case law, Plaintiffs and Class Counsel acted as pioneers in crafting a proposed definition. Arriving at a definition for "voluntary" involved significant creativity and strategic decision making and required in-depth and challenging research into analogous areas of law. This work was

accompanied by the legitimate risk that the Court would refuse to adopt Plaintiffs' proposed definition, and the litigation would be dismissed, or would not be able to proceed as a class action. Even if the Court were to adopt Plaintiffs' proposed definition of the term, it is likely Yale would have appealed. And, if Plaintiffs were successful in certifying a class, it is likely Yale would have challenged that decision. Appeals can take years and are costly. If the case was not dismissed at the trial level or overturned on appeal, a costly trial would have commenced. Moreover, the laws governing wellness programs are themselves complex, and implicate other federal statutes, including the Affordable Care Act ("ACA"). Parsing through how the wellness provisions in the ADA and GINA interact with the ACA also added a level of difficulty to this litigation. Thus, given the complexity, expense, and likely duration of the litigation, the certainty and immediacy of the relief provided by the Settlement is a beneficial outcome for Class Members. Accordingly, consideration of the first *Grinnell* factor weighs in favor of substantive fairness and final approval.

### ii. The Reaction of the Class to the Settlement

Here, the overwhelmingly positive reaction of the Class to the terms of the Settlement is a strong indicator of substantive fairness. "[An] important aspect of evaluating the fairness of the proposed settlement is the reaction of the class members." *Collins*, 2010 WL 1677764, at *3. "Courts may consider two reactions: opt-outs and objections." *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-1714, 2018 WL 3715273, at *10 (D. Conn. Aug. 3, 2018). "The reaction of the class is generally gauged by reference to the extent of objection to the settlement." *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006).

Here, the vast majority of Class Members have endorsed the settlement. Out of over 6,000 class members, there were *no* objections, and *only two* requests for exclusion. *See* Sutor

Decl. at ¶ 11; Ex. 2 to Aniskevich Decl. (copies of opt-outs). This resounding approval by 99.97% of Class Members demonstrates substantive fairness and weighs in favor of final approval. *See, e.g.*, *In re AOL*, 2006 WL 903236, at *10 (finding that an opt-out rate of less than 0.2% of 4.7 million class members favored settlement); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012) (approving settlement where "fewer than 1% of the tenants who received notice opted out of the lawsuit."); *Sykes v. Harris*, No. 09 Civ. 8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (approving settlement where "a miniscule number" of class members opted-out).

### iii. The Stage of the Proceedings and the Amount of Discovery Completed

This *Grinnell* factor also weighs in favor of substantive fairness because the proceedings advanced far enough prior to settlement negotiations to ensure Class Counsel had a robust understanding of the claims and could negotiate a fair and adequate settlement. "The stage of the proceedings and the amount of discovery completed at the time a Settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1993). "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176. "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *Id.* "The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner*, 2006 WL 903236, at *10.

Here, Class Counsel undertook an extensive investigation prior to filing the Complaint and the Amended Complaint, including interviewing over two dozen Class Members, reviewing and analyzing publicly available information about the HEP, and reviewing and analyzing other publicly available information relevant to the case, including information regarding the cost of living in Connecticut and the details of other employer-implemented wellness programs across the country. Aniskevich Decl. at ¶ 9. Class Counsel also conducted significant legal research to aid in developing its claims and to evaluate potential defenses. Furthermore, the Parties engaged in targeted discovery to support their cross-motions for summary judgment, including document discovery and one deposition. *Id*. at ¶ 17. Prior to commencing settlement negotiations, the parties also fully briefed cross-motions for summary judgment, in which they became intimately familiar with the legal issues surrounding the claims asserted. *Id*. at ¶ 18. Accordingly, because the Parties entered settlement negotiations only after a thorough understanding of the case, the settlement is substantively fair and reasonable, and should be finally approved.

### iv.      The Risks of Establishing Liability and Damages

"One of the Court's central inquiries when appraising a settlement is the likelihood that the class would prevail at trial in the face of the risks presented by further litigation." *In re AOL Time Warner*, 2006 WL 903236, at *11. Consideration of "this factor requires the Court to balance the benefits of immediate recovery promised by the [] proposed settlement agreement against the risks attendant to further litigation." *Collins*, 2010 WL 1677764, at *5. As discussed in connection with the first *Grinnell* factor, *see* Section VI.B.3.i, *supra*, Plaintiffs faced a significant and legitimate risk that the Court would not adopt their proposed definition of "voluntary" and the case would be dismissed. Moreover, even if the Court adopted Plaintiffs' proposed definition, Defendant advanced an argument in its motion for summary judgment that

11

because the HEP was the result of a collective bargaining agreement, the Court could not

conclude that it was not "voluntary." Although Plaintiffs believe this argument was incorrect, it

could have persuaded the Court and the case would have resulted in dismissal. Even if Plaintiffs

prevailed as to liability, they faced significant issues as to damages for those Class Members who

participated in the Program because those damages were non-economic and more difficult to

quantify, particularly on a class-wide basis. Accordingly, because Plaintiffs faced risks in

establishing liability and damages, the certainty and immediacy of the proposed Settlement

outweighed any benefit that could have resulted from continued litigation. Thus, this factor

further demonstrates the substantive fairness of the settlement, and counsels in favor of final

approval.

**v.**     **The Risks of Maintaining a Class Action Through Trial**

In assessing substantive fairness, courts also consider the risk of maintaining a class

action through trial. "This consideration is separate from, although related to, the Court's

determination that the class should be certified for settlement purposes." *In re Frontier*

*Commc'ns. Corp.*, No. 3:17-cv-1617, 2022 WL 4080324, at *13 (D. Conn. May 20, 2022). This

factor has been described by some courts as a "neutral factor" which "weigh[s] neither for nor

against approval of a proposed settlement." *Collins*, 2010 WL 1677764, at *5 (citing *In re*

*Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 314 (E.D.N.Y. 2006)).

Here, Plaintiffs faced risks in maintaining a class action through trial, in part because the

EEOC could have issued regulations that used an individualized test to determine whether a

monetary penalty for non-participation was "voluntary." Additionally, given the potential risks

associated with damages, discussed above, *see* Section VI.B.3.iv, *supra*, Plaintiffs may have had

trouble crafting a damages model that would withstand class certification, or may have had to

12

redefine the Class to include only those with economic damages. "Though the Court has certified the class for settlement purposes, the process of class certification 'would have subjected Plaintiffs to considerably more risk than the . . . certification that was ordered for the sole purpose of the Settlement.'" *In re Frontier Commc'ns Corp.*, 2022 WL 4080324, at *13 (quoting *In re AOL Time Warner*, 2006 WL 903236). Accordingly, this factor also demonstrates the fairness of the settlement and supports final approval.

### vi.    Defendant's Ability to Withstand a Greater Judgment

Courts also consider whether the defendant could have withstood a greater judgment when considering substantive fairness, but this factor, "standing alone, does not suggest that the settlement is unfair," especially where the "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato*, 236 F. 3d at 86. While it is likely Yale could withstand a greater judgment, the monetary recovery in this case is remarkable because it exceeds the amount of HEP fees collected during the Class Period. Thus, despite Yale's arguments regarding Plaintiffs' ability to certify a non-economic damages class, they agreed to a monetary settlement that ensured those Class Members would be compensated. But, in any event, "given the application of the other *Grinnell* factors in this case, the Court need not determine whether Defendant[] could have withstood a larger judgment, and may still approve the settlement agreement." *In re Frontier*, 2022 WL 4080324, at *13.

### vii.    The Range of Reasonableness of the Settlement

The final *Grinnell* factors require examination of the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation. A court should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed

settlement is reasonable." *Grinnell*, 495 F.2d at 462; *see In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y 1993) (explaining that whether a settlement is within the range of reasonableness "is not susceptible of a mathematical equation yielding a particularized sum."). Here, it is hard to estimate the total maximum damages available given the difficulty in quantifying the non-economic damages. However, during the Class Period, Yale collected just under $1 million in HEP fees, and the monetary recovery of $1.29 million exceeds this amount. Given the difficulties in quantifying the non-economic damages and the significant risks Class Counsel faced in certifying a non-economic damages class, the monetary component of the settlement is an achievement because it exceeds the economic damages accrued in this case. Furthermore, as discussed above, Plaintiffs faced significant risks in establishing liability. Accordingly, the Settlement achieved is within the range of reasonableness given the strengths and weaknesses of the case and the monetary damages incurred, and demonstrates the Settlement is substantively fair and should be finally approved.

### C.       The Court Should Certify the Settlement Class as Final

The Court's Preliminary Approval Order provisionally certified the Settlement Class pursuant to rule 23(a) and (b)(3). ECF No. 97 at 2-3. The Court ruled that, for purposes of the Settlement, the Class met Rule 23's requirements. *Id*. The Court also conditionally appointed Plaintiffs Kwesell, Turecek, and Schwartz as Class Representatives and Plaintiffs' Counsel as Class Counsel. *Id.* These decisions should now be confirmed as final.

## VI.   CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Preliminary Approval Motion, Plaintiffs respectfully request that the Court grant Final Approval to the Settlement,

grant final certification to the Class, and designate Plaintiffs Kwesell, Turecek, and Schwartz as

Class Representatives and Plaintiffs' counsel as Class Counsel.

/s/ Elizabeth Aniskevich
**AARP FOUNDATION**
Elizabeth Aniskevich (*pro hac vice*)
Daniel B. Kohrman (*pro hac vice*)
601 E Street, NW
Washington, DC 20049
Tel:     (202) 434-2072
Fax:    (202) 434-6424
Email: eaniskevich@aarp.org
           dkohrman@aarp.org

*Co-Counsel for Plaintiffs Kwesell, Turecek,
and Schwartz*

**GARRISON, LEVIN-EPSTEIN,
FITZGERALD & PIRROTTI, P. C.**
Joshua R. Goodbaum (ct28834)
405 Orange Street
New Haven, Connecticut, 06511
Tel.:   (203) 777-4425
Fax:    (203) 776-3965
Email: jgoodbaum@garrisonlaw.com

*Co-Counsel for Plaintiffs Kwesell, Turecek,
and Schwartz*

15

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 15th day of November 2022 a copy of the foregoing was electronically filed (and served by mail on anyone unable to accept electronic filing).  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system (or by mail to anyone unable to accept electronic filing).  Parties may access this filing through the Court's CM/ECF system.

*/s/ Elizabeth A. Aniskevich*
Elizabeth A. Aniskevich
